# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| XPO LOGISTICS, INC., | ) | Civil No. 3:19-cv-00348-FDW-DSC |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT JESSICA NORTHROP'S** |
| JESSICA NORTHROP, | ) | **ANSWER TO VERIFIED COMPLAINT** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

Defendant, Jessica Northrop ("Northrop"), hereby answers Plaintiff's Verified Complaint as follows. For the Court's convenience and for ease of future reference, the allegations of Plaintiff's Verified Complaint are set forth verbatim with Plaintiff's responses immediately following each allegation.

    1.    This action arises from Defendant Jessica Northrop's ("Northrop" or "Defendant") violation of the noncompetition, confidentiality and return-of-company property covenants set forth in her employment agreement with Plaintiff. On June 4, 2019, Northrop resigned from her position as XPO's Service Center Manager in East Syracuse, New York to take the same position at a new facility that a direct competitor was opening in the same market. Further, after Defendant had accepted a position with XPO's competitor, but while still employed at XPO, she sent multiple emails from her company email account to her personal email account containing XPO's confidential information and proprietary materials.

    **<u>ANSWER:</u>**    Northrop admits that XPO alleges violations of the noncompetition, confidentiality, and return of property covenants set forth in her employment agreement with

Plaintiff, but denies the allegations as phrased and denies that XPO has suffered any harm or damages as a result of the alleged conduct. Northrop further admits that On June 4, 2019, Northrop resigned from her position as XPO's Service Center Manager in East Syracuse, New York, but she denies that she accepted the same position at a new facility that a direct competitor was opening in the same market. Answering further, Northrop admits she sent multiple emails from her company email account to her personal email account containing materials related to her prior employment with XPO. Northrop denies the remaining allegations of Paragraph 1 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

2.      XPO is a global transportation and supply chain solutions provider. XPO's less-than-truckload ("LTL") division, in which Northrop worked, is intensively competitive. XPO is a top-three provider of LTL services in North America.

**ANSWER:**      Northrop admits that XPO is a global transportation and supply chain solutions provider and that XPO is a top-three provider of LTL services in North America. Northrop lacks knowledge or information sufficient to form a belief about the truth of the allegation that XPO's less- than-truckload ("LTL") division, in which Northrop worked, is intensively competitive, and therefore denies this allegation.

3.      Defendant Northrop worked for XPO as the Service Center Manager for XPO's LTL facility in East Syracuse, New York.

**ANSWER:**      Northrop admits the allegations contained in Paragraph 3 of Defendant's Verified Complaint.

4.      In her role for XPO, as detailed below, Northrop managed all aspects of the operations of the Syracuse facility and its relationships with customers and carriers. In connection with this position, Northrop dealt directly with XPO's current and prospective

2

customers and had access to XPO's confidential information, including pricing, operating costs and expenses, budgeting, customer data, needs and preferences, customer relations, proprietary technology, operational processes and tools and market strategy and performance.

**ANSWER:** Northrop denies the allegations of Paragraph 4 of Plaintiff's Verified Complaint.

5. In connection with her employment by XPO, Northrop agreed in a written Confidential Information Protection Agreement (the "Agreement") that, for a period of six months following termination of her employment, she would not perform services for a Competing Business in an area, division or segment that competes with XPO.

**ANSWER:** Northrop admits that the Confidential Information Protection Agreement contains provisions regarding non-competition. Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 5 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

6. In the Agreement, she also promised that she would not, at any time, directly or indirectly, use, disclose or copy XPO's Confidential Information.

**ANSWER:** Northrop admits that the Agreement contains provisions regarding confidential information. Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 6 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

7. She also agreed to return all XP0 Confidential Information and property, including any documents, data, computers, or other business equipment belonging to XPO, no later than the last day of her employment.

3

**ANSWER:** Northrop admits that the Agreement contains provisions regarding the return of confidential information. Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 7 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

8. In violation of her contractual duties to XPO, Northrop is now working for Saia LTL Freight ("Saia") as the Terminal Manager for the facility it has just opened in Syracuse, New York. At that facility, Saia provides LTL services that compete directly with the LTL services provided by XP0. In her role, Northrop will perform the same or substantially the same services for Saia that she performed during her employment with XPO.

**ANSWER:** Northrop denies the allegations of Paragraph 8 of Plaintiff's Verified Complaint.

9. Moreover, the materials she secretly and unlawfully took from XPO will allow her to assist the competitor's start-up of its facility using XP0's confidential and proprietary information.

**ANSWER:** Northrop denies the allegations of Paragraph 9 of Plaintiff's Verified Complaint.

## PARTIES AND JURISDICTION

10. Plaintiff XPO is a Delaware corporation with offices in Charlotte, North Carolina, and its corporate headquarters located in Greenwich, Connecticut.

**ANSWER:** Northrop admits the allegations of Paragraph 10 of Plaintiff's Verified Complaint.

11. Upon information and belief, Defendant Jessica Northrop is a resident of New York. As described in more detail below, she was employed by XPO or the company it acquired,

4

Con-Way Freight, from 2009 until June 4, 2019. Pursuant to the Agreement, Northrop consented to the exclusive jurisdiction of state and federal courts located in Mecklenburg County, North Carolina, where XPO has a substantial presence, and affirmatively waived any objection to personal jurisdiction or venue in those courts.

**ANSWER:**   Northrop admits she is a resident of New York and that she was employed by XPO or the company it acquired, Con-Way Freight, from 2009 until June 4, 2019.  Northrop states that the terms of the Agreement speak for themselves.  Northrop denies the remaining allegations of Paragraph 11 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

## XPO LOGISTICS, INC.

12.     XPO is a global leader in LTL transportation and constitutes one of the largest LTL providers in North America. The LTL division utilizes 8,000 tractors, 25,000 trailers and more than 13,000 drivers, operating out of facilities such as the one for which Northrop served as the Service Center Manager. XPO's coverage extends to every state, encompassing 99% of all U.S. zip codes, as well as cross-border transportation for shipments to and from Mexico, Puerto Rico and Canada.

**ANSWER:**   Northrop lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 12 of Plaintiff's Verified Complaint, and therefore, denies the same.

13.     XPO operates a transportation network that includes over 75,000 next-day and two-day lanes and offers multimodal transportation and logistics solutions to its customers through the use of data-driven reporting and custom analytics. It provides visibility and transportation management capabilities to its customers through its online LTL hub.

5

**ANSWER:**    Northrop lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 13 of Plaintiff's Verified Complaint, and therefore, denies the same.

## NORTHROP'S AGREEMENT

14.    In connection with her employment by XPO, Northrop entered into the Agreement, which is attached to this Complaint as Exhibit 1.

**ANSWER:**    Northrop admits that as a condition of her employment with XPO, she became a signatory to the Agreement.  Northrop denies the remaining allegations of Paragraph 14 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

15.    In Section 1 of the Agreement, Northrop promised to use XPO's Confidential Information only for XPO's benefit and that, other than as required to fulfill her duties for XPO, she would not use, disclose or copy XPO's Confidential Information or assist any other person or entity to do so.

**ANSWER:**    Northrop admits that the Agreement contains provisions regarding the Confidential Information.  Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 15 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

16.    Section 2 of the Agreement requires Northrop to return all of XPO's Confidential Information and other property, including all information stored in electronic form, to XPO by the last day of her employment.

**ANSWER:**    Northrop admits that the Agreement contains provisions regarding the Confidential Information.  Northrop states that the terms of the Agreement speak for themselves.

Northrop denies the remaining allegations of Paragraph 16 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

17.     As used in the Agreement, "Confidential Information" means information not generally known or proprietary to XPO about its businesses, affairs, operations, products, services, client and carrier lists, pricing strategies, operating processes, business methods and procedures, information technology and information-gathering techniques and methods, business plans, financial affairs and other accumulated data. By way of illustration, the  term  "Confidential Information" includes: information about clients, carriers,  and  vendors; information about sales and marketing (including plans and strategies); information about other third parties with whom XPO does business; and data, analyses, compilations, forecasts, studies and other documents that contain Confidential Information that is not known to the public generally.

**ANSWER:**    Northrop admits that the Agreement contains provisions regarding "Confidential Information."  Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 17 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

18.     Northrop agreed, in Section 6 of the Agreement, that while employed by XPO, and for a period of six months thereafter, she would not call on, contact, solicit or otherwise take away or disrupt, XPO's relationship with any customers or carriers on whose accounts she worked, with whom she had regular contact or as to which she had Confidential Information.

**ANSWER:**    Northrop admits that the Agreement contains provisions under Section 6 of the Agreement. Northrop states that the terms of the Agreement speak for themselves. Northrop denies the remaining allegations of Paragraph 18 of Plaintiff's Verified Complaint.

7

19.     In Section 7 of the Agreement, Northrop promised that, while employed by XPO and for a period six months thereafter, she would refrain from performing services for a Competing Business (like Saia) in an area, division or segment that competes with XPO.

**ANSWER:**     Northrop admits that the Agreement contains provisions under Section 7 of the Agreement. Northrop states that the terms of the Agreement speak for themselves.  Northrop denies the remaining allegations of Paragraph 19 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

20.     Northrop also agreed, in Section 18 of the Agreement, that XPO would be entitled to an injunction restraining the breach of restrictive covenants contained in the Agreement without posting bond.

**ANSWER:**     Northrop admits that the Agreement contains provisions under Section 18 of the Agreement. Northrop states that the terms of the Agreement speak for themselves.  Northrop denies the remaining allegations of Paragraph 20 of Plaintiff's Verified Complaint and denies XPO is entitled to any relief.

21.     Since 2009, Northrop has worked in the LTL business for XPO or its predecessor, with access to the Company's Confidential Information. In April 2016, Northrup accepted a transfer from her position as Service Center Manager of a smaller XPO facility in Syosset, New York to Service Center Manager for the Syracuse facility. In connection with this transfer, Northrup - on April 4, 2016 -- signed the Agreement. She also received an annual salary increase of $9,285.12 in connection with this transfer and in consideration for signing the Agreement. She has served as the Service Center Manager for the Syracuse facility since April 10, 2016.

**ANSWER:**     Northrop admits that Since 2009, she has worked in the LTL business for XPO or its predecessor.  Northrop admits further that in April 2016, she accepted a transfer from

8

her position as Service Center Manager of a smaller XPO facility in Syosset, New York to Service Center Manager for the Syracuse facility. Northrop admits further she has served as the Service Center Manager for the Syracuse facility since April 10, 2016. Northrop further admits she had access to certain limited documents that XPO deems "Confidential Information." Northrop denies she had access to all documents XPO deems "Confidential Information." Except as expressly admitted, Defendant denies the allegations of Paragraph 21 of Plaintiff's Verified Complaint.

22.     As the Syracuse Service Center Manager, Northrop was responsible for the overall management and performance of the facility and its employees. Her duties included selling XPO's services to businesses; managing interaction with those customers; problem solving customer concerns; management of all employees; and management of all costs attributable to the facility, including vendor costs, maintenance, supplies, manpower  planning and customer claims. Northrop had overall P&L responsibility for the Syracuse facility.

**ANSWER:**     Northrop admits that as the Syracuse Service Center Manager she was responsible for the overall management and performance of the facility and its employees and that her duties included managing interaction with the facilitie's customers; problem solving customer concerns; management of all employees; and management of all costs attributable to the facility, including vendor costs, maintenance, supplies, manpower planning and customer claims. Defendant further admits that Northrop had overall P&L responsibility for the Syracuse facility. Except as expressly admitted, Defendant denies the allegations of Paragraph 22 of Plaintiff's Verified Complaint.

23.     In her role as Manager of the Service Center, she worked directly and closely with XPO's customers, assisting the account executive with obtaining new business and managing and addressing operational issues and problems with current XPO customers.

**ANSWER:**     Northrop admits that in her role as Manager of the Service Center, she addressed operational issues and problems with current XPO customers.  Except as expressly admitted, Defendant denies the remaining allegations of Paragraph 23 of Plaintiff's Verified Complaint.

24.     Through her employment, Northrop became privy to XPO's proprietary Confidential Information regarding XPO's LTL business and customers, including business strategy, pricing, contracts, employee compensation, proprietary management and operational processes and competitive offerings.

**ANSWER:**     Northrop denies the allegations of Paragraph 24 of Plaintiff's Verified Complaint.

25.     Northrop also used and obtained knowledge about XPO's unique and proprietary technology for managing transportation and communicating with customers. These technology tools, such as those related to routing systems, business intelligence systems and safety systems, provide XPO with advantages over its competitors in the LTL industry. Northrup became familiar, as a part of her job duties for XPO, with XPO's confidential freight movement systems and procedures, as well as its corporate security procedures.

**ANSWER:**     Northrop denies the allegations of Paragraph 25 of Plaintiff's Verified Complaint.

26.     Northrop also acquired significant Confidential Information about XPO's LTL business outside of her own facility. For example, she participated in weekly meetings of

managers in her district-comprised of 20 facilities in a seven-state territory-in which Confidential Information about the district's financial and operational performance, goals, strategy and challenges was addressed. In connection with those meetings, XPO provided Northrop with a confidential "Business Information Report," which provided detailed data regarding the operations and financial performance, such as revenue, tonnage and yield, for all of the facilities in her district.

**ANSWER:**    Northrop admits that she participated in weekly meetings of managers in her district comprised of 20 facilities in a seven-state territory.  Defendant further admits that she was provided a "Business Information Report" in connection with these meetings.  Except as expressly admitted, Defendant denies the allegations of Paragraph 26 of Plaintiff's Verified Complaint.

27.    Northrop also participated in weekly meetings with the leadership team in which she was provided with Confidential Information on certain designated topics, such as operations, financial issues, safety and staffing.

**ANSWER:**    Northrop admits that she participated in weekly meetings with the leadership team.  Whether Northrop was provided "Confidential Information on certain designated topics, such as operations, financial issues, safety and staffing" is a legal conclusion to which no answer is required.  Except as expressly admitted, Northrop denies the allegations of Paragraph 27 of Plaintiff's Verified Complaint.

28.    Further, as a Facility Services Manager, Northrop had access to confidential financial and operational data for every LTL terminal in XPO's East region, one of four (4) LTL regions of XPO. She also participated in a monthly " manager meeting" at which XPO's LTL

executive leadership reviewed the financial performance and goals for XPO's entire LTL business.

**ANSWER:**    Northrop admits that she had access to financial and operational data for every LTL terminal in XPO's East region but denies accessing this data for any facility beyond Syracuse, New York, for which she was responsible.  Whether this data was "confidential" is a legal conclusion for which no answer is required.  Northrop further admits that she participated in a monthly manager meeting.  Northrop lacks knowledge or information sufficient to form a belief as to whether these meetings included a review of "financial performance and goals for XPO's entire LTL business," and therefore, denies the same.  Except as expressly admitted, Northrop denies the allegations of Paragraph 28 of Plaintiff's Verified Complaint.

29.    Because of the intensely competitive nature of the logistics industry, XPO closely guards this sensitive and proprietary Confidential Information. XPO protects its Confidential Information by a secure computer network, accessible only to employees through password authentication and only for XPO's business purposes, and through confidentiality agreements and policies with its employees. XPO's Confidential Information is not available to the public generally or to XPO's competitors. Disclosure of the Confidential Information would damage XPO in a manner that would be difficult to calculate.

**ANSWER:**    Northrop denies the allegations of Paragraph 29 of Plaintiff's Verified Complaint.

30.    XPO only recently learned that Northrop violated the Agreement by emailing to her personal email account XPO's proprietary materials and Confidential Information.

**ANSWER:**    Northrop denies the allegations of Paragraph 30 of Plaintiff's Verified Complaint.

12

31.     Northrop is currently working for Saia, which directly competes with XPO in the LTL business. According to its public filings, in May 2017, Saia implemented a strategy to begin serving new markets in the Northeast by opening new terminals in the region. As part of that strategy, Saia opened up a LTL facility in Syracuse on or about June 17, 2019.

**ANSWER:**    Northrop lacks knowledge or information sufficient to form a belief about the truth of the allegation that "according to its public filings, in May 2017, Saia implemented a strategy to begin serving new markets in the Northeast by opening new terminals in the region. As part of that strategy, Saia opened up a LTL facility in Syracuse on or about June 17, 2019," and therefore, denies the same. Northrop denies the remaining allegations of Paragraph 31 of Plaintiff's Verified Complaint.

32.     On May 29, 2019, while working at XPO's Syracuse terminal, Northrop received a written offer from Saia LTL Freight to serve as the Terminal Manager for its newly opened Syracuse terminal. She accepted the offer that same day.

**ANSWER:**    Northrop admits the allegations of Paragraph 32 of Plaintiff's Verified Complaint.

33.     XPO recently completed a forensic examination of Northrop's XPO email account and discovered that, on the same day she accepted Saia's offer of employment, she secretly emailed to her personal email account multiple XPO materials containing proprietary management tools and Confidential Information.

**ANSWER:**    Northrop lacks knowledge or information sufficient to form a belief about the truth of the allegation that that XPO "recently completed a forensic examination of Northrop's XPO email account," and therefore, denies the same. Northrop denies the remaining allegations of Paragraph 33 of Plaintiff's Verified Complaint.

13

34. Based on its investigation to date, XPO has learned that on May 29 and 31, 2019, Northrop emailed the following XPO documents to her personal email account, jln731@yahoo.com:

    (a)    "Third Quarter Update.pptx" (PowerPoint presentation)

    (b)    '·Q4Playbook.xlsx" (Excel spreadsheet)

    (c)    "Conference Report" form

    (d)    "SWFL matter.xlsx" (Excel spreadsheet)

    (e)    "SCM Responsibilities and Expectations.xlsx" (Excel spreadsheet)

    (t)    "Pre-shift template.xlsx" (Excel spreadsheet)

    (g)    "Copy of DockXSY.xls" (Excel spreadsheet)

    (h)    'XSY Employee_Training_Record_Spreadsheet_ xlsx" (Excel spreadsheet)

**ANSWER:**    Northrop admits the allegations of Paragraph 34 of Plaintiff's Verified Complaint.

35. The XPO documents that Northrop emailed to herself constituted confidential and proprietary information about XPO's business, including its operations, business strategy, customers and financial information.

**ANSWER:**    Northrop denies the allegations of Paragraph 35 of Plaintiff's Verified Complaint.

36. For example, the "Third Quarter Update" is a proprietary tool that XPO uses to communicate operational and performance information to its employees. It also includes confidential substantive information, such as competitively sensitive information about the company's incentive plan for its employees.

14

**ANSWER:** Whether the "Third Quarter Update" is a "proprietary" tool and contains "confidential" information are legal conclusions to which no answer is required. Northrop lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 36 of Plaintiff's Verified Complaint, and therefore, denies the same.

37. The "Q4 Playbook" was provided to Northrop in connection with the weekly meeting with the leadership team discussed above. It is a proprietary management tool that XPO developed and that is designed to identify and execute strategies and actions to drive improvements across all aspects of an LTL facility's business. XPO believes that the development and use of this management tool provides it with a competitive advantage in the LTL industry.

**ANSWER:** Whether the "Q4 Playbook" is "proprietary" is a legal conclusion to which no answer is required. Northrop denies that the Q4 Playbook was provided to her in weekly meetings. Northrop lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 37 of Plaintiff's Verified Complaint, and therefore, denies the same.

38. Northrop also took other XPO documents and forms that XPO developed to assist its managers in effectively and efficiently managing the facility's operations and its workforce.

**ANSWER:** Northrop denies the allegations of Paragraph 38 of Plaintiff's Verified Complaint.

39. Taken together, the confidential materials she took from XPO provide her with a ready-made "starter kit" to open up and manage the operations of a new facility, such as the one where she is now working. Northrop and her employer will obtain an unfair and improper

15

advantage if Northrop is allowed to retain and utilize XPO's information, processes and materials as they compete in the same market.

**ANSWER:**   Northrop denies the allegations of Paragraph 39 of Plaintiff's Verified Complaint.

40.      Northrop had no lawful or business purpose for sending to her personal email account XPO's Confidential Information pertaining to XPO's business. Northrop's purpose in forwarding the XPO information was not to further the business interests of XPO, but so that Northrop could use the information and materials to provide her with shortcuts as she began managing the new Saia facility through the use of XPO's own business information and forms.

**ANSWER:**   Northrop denies the allegations of Paragraph 40 of Plaintiff's Verified Complaint.

41.      On June 4, 2019, Northrop resigned from XPO and her employment terminated.

**ANSWER:**   Northrop admits the allegations of Paragraph 41 of Plaintiff's Verified Complaint.

42.      Northrop did not return the XPO materials she had emailed to her own personal account or disclose to XPO that she had taken the documents. Absent its own investigation, XPO may never have learned that its former employee and direct competitor intended to use XPO materials and Confidential Information to compete against it in the same market.

**ANSWER:**   Northrop denies the allegations of Paragraph 42 of Plaintiff's Verified Complaint.

43.      XPO's competitor, by hiring XPO's terminal manager to serve as its terminal manager in the same location and by virtue of the ability to access XPO's Confidential Information,

16

including as set forth in the materials identified above, would obtain an unfair competitive advantage.

**ANSWER:** Northrop denies the allegations of Paragraph 43 of Plaintiff's Verified Complaint.

44. By letter dated June 13, 2019 (attached hereto as Exhibit 2), XPO demanded that Northrop comply with her obligations under the Agreement. Northrop did not respond.

**ANSWER:** Northrop denies the allegations of Paragraph 44 of Plaintiff's Verified Complaint.

45. Accordingly, to prevent continued irreparable harm from Northrop's violation of her noncompetition, confidentiality and return-of-property covenants, XPO has been compelled to file this lawsuit to obtain injunctive relief restraining the Defendant from further unlawful actions.

**ANSWER:** Northrop denies the allegations of Paragraph 45 of Plaintiff's Verified Complaint.

## COUNT I BREACH OF CONTRACT

46. The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

**ANSWER:** Defendant realleges and reincorporates the preceding paragraphs of her Answer as if fully set forth herein.

47. The Agreement is a valid, binding, and enforceable contract between Northrop and XPO.

**ANSWER:** Northrop denies the allegations of Paragraph 47 of Plaintiff's Verified Complaint.

48.     Northrop has breached her obligation not to perform services for a Competing Business in an area that competes with XPO.

**ANSWER:**     Northrop denies the allegations of Paragraph 48 of Plaintiff's Verified Complaint.

49.     Northrop has breached the Agreement by taking without authorization XPO's Confidential Information and property for her own benefit and use and by failing to return XPO's Confidential Information and property by no later than her last day of employment.

**ANSWER:**     Northrop denies the allegations of Paragraph 49 of Plaintiff's Verified Complaint.

50.     Northrop's conduct also constitutes a breach of the covenant of good faith and fair dealing implied in the contract between the parties.

**ANSWER:**     Northrop denies the allegations of Paragraph 50 of Plaintiff's Verified Complaint.

51.     As a direct and proximate result of these actions, XPO has been damaged and is entitled to the relief set out below.

**ANSWER:**     Northrop denies the allegations of Paragraph 51 of Plaintiff's Verified Complaint.

**COUNT II**
**VIOLATION OF THE NORTH CAROLINA**
**UNFAIR AND DECEPTIVE TRADE**
**PRACTICES ACT**

52.     The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

18

**ANSWER:**    Defendant realleges and reincorporates the preceding paragraphs of her Answer as if fully set forth herein.

53.    As described above, Northrop has engaged in conduct constituting unfair competition and unfair or deceptive acts or practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.

**ANSWER:**    Northrop denies the allegations of Paragraph 53 of Plaintiff's Verified Complaint.

54.    Northrop's actions in this regard were in and affecting commerce.

**ANSWER:**    Northrop denies the allegations of Paragraph 54 of Plaintiff's Verified Complaint.

55.    Northrop's actions were unethical and unscrupulous and she acted in a manner that was designed to and did deceive XPO.

**ANSWER:**    Northrop denies the allegations of Paragraph 55 of Plaintiff's Verified Complaint.

56.    Northrop's actions proximately caused injury to XPO, and XPO was damaged and is entitled to the relief as set out below, including trebled damages  and attorneys' fees pursuant to Chapter 75-1 of the North Carolina General Statutes.

**ANSWER:**    Northrop denies the allegations of Paragraph 56 of Plaintiff's Verified Complaint.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

57.    The allegations of the preceding paragraphs of this Complaint are incorporated by reference and realleged as if fully set forth herein.

19

**ANSWER:**    Defendant realleges and reincorporates the preceding paragraphs of her Answer as if fully set forth herein.

58.    Pursuant to North Carolina Rule of Civil Procedure 65, XPO is entitled to, and seeks, a temporary restraining order and preliminary injunctive relief prohibiting Northrop from violating her non-competition, confidentiality and return-of-property obligations. Unless so enjoined, Northrop's actions will cause irreparable harm to XPO and will cause injuries that cannot be adequately compensated by monetary damages. Unless enjoined, the injury to XPO is immediate and pressing, and a temporary restraining order and preliminary injunctive relief are necessary to preserve the status quo, to protect XPO's rights, and to prevent injury to XPO pending the trial of this action.

**ANSWER:**    Northrop denies the allegations of Paragraph 58 of Plaintiff's Verified Complaint.

59.    Specifically, XPO is entitled to, and seeks, the following temporary and preliminary injunctive relief until the final disposition of this matter:

(a)    prohibiting Defendant from performing services for a Competing Business, including Saia, in an area, division or segment that competes with XPO;

(b)    prohibiting Defendant from using or disclosing XPO's Confidential Information or assisting any other person in doing so;

(c)    prohibiting Defendant from accessing, disclosing, destroying, removing, transferring, copying, sharing or altering any documents or tangible things that constitute Confidential Information or that belong to XPO, including without limitation computer files and other electronic data;

(d)     immediately compelling Defendant to provide for inspection and imaging any electronic devices in her possession, custody, or control that currently or previously contained Confidential Information or other documents or information relating to XPO's business, including without limitation any personal media or storage drives;

(e)     compelling Defendant immediately to return any Confidential Information to XPO; and

(f)     awarding XPO any such other and further relief as appropriate.

**ANSWER:**     Northrop denies the allegations of Paragraph 59 and 59(a)-(f) of Plaintiff's Verified Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

To the extent that an answer or response may be required that is not set forth herein, Northrop denies any allegation contained in Plaintiff's Verified Complaint.

### Second Affirmative Defense

Plaintiff's Verified Complaint, and each claim contained therein, fails to state a claim upon which relief can be granted.

### Third Affirmative Defense

Some or all of Defendant's requested damages are not available under the prevailing law.


Dated:  July 30, 2019


    /s/  Philip J. Gibbons, Jr
Philip J. Gibbons, Jr., NCSB# 50276
phil@gibbonsleis.com
Craig L. Leis, NCSB #48582
craig@gibbonsleis.com

21

GIBBONS LEIS, PLLC
14045 Ballantyne Corporate Pl., Suite 325
Charlotte, NC  28277
Telephone: (704)-612-0038
Facsimile (704) 612-0038

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

This is to certify that on July 30, 2019, the undersigned counsel filed the foregoing pleading using the Court's CM/ECF system that will send notification of this filing to all counsel of record.

      /s/  Philip J. Gibbons, Jr       
Philip J. Gibbons, Jr., NCSB# 50276
phil@gibbonsleis.com

*Attorney for Plaintiff*